IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLA F.,                                        *
                                                 *
                    Plaintiff,                   *
                                                 *
        vs.                                      *          Civil Action No.   ADC-20-2659
                                                 *
KILOLO KIJAKAZI,                                 *
Acting Commissioner,                             *
Social Security Administration                   *
                                                 *
                    Defendant.                   *
                                                 *

* * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION

On September 15, 2020, Willa F. ("Plaintiff") petitioned this Court to review the Social

Security Administration's ("SSA") final decision to deny her claim for Disability Insurance

Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the

Social Security Act ("the Act"). ECF No. 1 ("the Complaint"). Plaintiff and Defendant each filed

motions for summary judgment (ECF Nos. 16, 17) on July 16, 2021 and September 14, 2021,

respectively.[1] After considering the Complaint and the parties' motions, the Court finds that no

hearing is necessary. Loc.R. 105.6 (D.Md. 2021). For the reasons that follow, Plaintiff's Motion

for Summary Judgment (ECF No. 16) is DENIED, Defendant's Motion for Summary Judgment

(ECF No. 17) is GRANTED, and the SSA's decision is AFFIRMED.

### PROCEDURAL HISTORY

On December 28, 2015, Plaintiff filed both a Title II application for DIB and a Title XVI

application for SSI, alleging disability since May 26, 2009. ECF No. 13-4 at 286. Her claim was

---

[1] This case was assigned to United States Magistrate Judge A. David Copperthite for all
proceedings on September 30, 2021, in accordance with 28 U.S.C. § 636 and Local Rules 301 and
302. ECF Nos. 3–5.

denied initially on May 26, 2016, and upon reconsideration on September 30, 2016. *Id.* Subsequently, Plaintiff requested a hearing, and on April 13, 2018, Administrative Law Judge ("ALJ") NaKeisha Blount presided over a hearing. *Id.* On July 24, 2018, the ALJ rendered a decision that Plaintiff was not disabled under the Act. *Id.* at 298. Plaintiff then requested a review of the ALJ's decision, which the Appeals Council granted on August 9, 2019. *Id.* at 306. On remand, ALJ Blount presided over a second hearing on February 3, 2020 and again found that Plaintiff was not disabled under the Act. ECF No. 13-3 at 45–59. Plaintiff requested review of the ALJ's second decision, and the Appeals Council denied the request. *Id.* at 1. Thus, the ALJ's decision became the final decision of the SSA. *See* 20 C.F.R. §§ 404.981, 416.1481; *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). On September 15, 2020, Plaintiff then filed the Complaint in this Court seeking judicial review of the SSA's denial of her disability applications. ECF No. 1.

## STANDARD OF REVIEW

This Court may review the SSA's denial of benefits under 42 U.S.C. § 405(g). *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court's review of an SSA decision is deferential: "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). *See Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."). The issue before the reviewing Court is whether the ALJ's finding of nondisability is supported by substantial evidence and based upon current legal standards. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (citations omitted). In a substantial evidence review, the Court does not

"reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citations omitted). Therefore, in conducting the "substantial evidence" inquiry, the Court must determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB or SSI, a claimant must establish that she is under disability within the meaning of the Act. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant is determined to be under disability where "[her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step sequential evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). "If at any step a finding of disability or nondisability can be made,

the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments]" that is either expected to result in death or to last for a continuous twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509, 416.920(a)(4)(ii), 416.909. If not, the claimant is not disabled. At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, the claimant is considered disabled, regardless of her age, education, and work experience. *See Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. §§ 404.1520(e), 416.920(a)(4)(iv). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. §§ 404.1529(a), 416.929(a). First, the ALJ must determine whether objective evidence

4

shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b). Once the claimant makes that threshold showing, the ALJ must then evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). At this second step, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. *See generally* SSR 96-7p, 1996 WL 374186 (July 2, 1996). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *3. However, the ALJ may not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not differentiate them." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (quoting SSR 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016) (citations omitted)). Requiring objective medical evidence to support a plaintiff's subjective evidence of pain "improperly increases [Plaintiff's] burden of proof." *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017).

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. Claimant has the burden of proof during steps one through four of the evaluation. 20 C.F.R. §§ 404.1520, 416.920; *see Radford*, 734 F.3d at 291. However, at step five, the burden of proof shifts to the ALJ to prove: (1) that there is

5

other work that the claimant can do, given the claimant's age, education, work experience, and

RFC, and (2) that such alternative work exists in significant numbers in the national economy. 20

C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73. If the claimant

can perform other work that exists in significant numbers in the national economy, the claimant is

not disabled. If the claimant cannot perform other work, the claimant is disabled.

## ALJ DETERMINATION

The ALJ performed the sequential evaluation and found at step one that Plaintiff had not

engaged in substantial gainful activity since the alleged onset date of May 26, 2009. ECF No. 13-

3 at 47. At step two, the ALJ found that Plaintiff had severe impairments of personality disorder,

developmental disorder, social anxiety, depression, autism, schizophreniform illness, and post-

traumatic stress disorder ("PTSD"). *Id.* at 48. At step three, the ALJ determined that Plaintiff did

not have an impairment or combination of impairments that met or medically equaled the severity

of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* The ALJ then determined

that Plaintiff had the RFC:

> [T]o perform a full range of work at all exertional levels but with
> the following nonexertional limitations: the claimant can perform
> simple, routine, and repetitive tasks, but not at a production pace
> (e.g. assembly line work). The claimant can handle frequent
> interaction with supervisors and coworkers, occasional tandem
> work, and occasional interaction with the public. She can have
> occasional exposure to hazards, such as unprotected heights and
> moving mechanical parts, noise no louder than a typical office
> setting level, and lights no brighter than a typical office setting level.

*Id.* at 49. At step four, the ALJ found that Plaintiff was able to perform past relevant work as a

housekeeper. *Id.* at 57. Finally, the ALJ also found that Plaintiff was capable of "other work that

exists in significant numbers in the national economy," considering Plaintiff's age, education,

work experience, and RFC. *Id.* at 58. Thus, the ALJ concluded that Plaintiff "has not been under a disability, as defined in [the Act]" from May 26, 2009. *Id.*

## DISCUSSION

Plaintiff raises two arguments on appeal: (1) the ALJ's step three determination that Plaintiff's impairments did not meet or equal the requirements of Listing 12.03, 12.04, and 12.06 is not supported by substantial evidence; and (2) the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to defer to Plaintiff's treating physician, applied an incorrect legal standard, and failed to explain the sufficiency of the production rate pace limitation. ECF No. 16-2 at 7, 17, 25. I address Plaintiff's arguments below.

1.   ALJ's Evaluation of Plaintiff's Impairments and Listing 12.03, 12.04, and 12.06

Plaintiff first argues that the ALJ failed to properly assess her impairments against Listings 12.03, 12.04, and 12.06. *Id.* at 7. Plaintiff is entitled to a conclusive presumption that she is disabled within the meaning of the Act where she can show that her condition "meets or equals the listed impairments" in 20 C.F.R. pt. 404, subpt. P, app. 1. *Bowen v. City of New York*, 476 U.S. 467, 471 (1986); *see McNunis v. Califano*, 605 F.2d 743, 744 (4th Cir. 1979) (stating that the listings, if met, are "conclusive on the issue of disability"). "[A]n ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F.Supp.2d 384, 390 (D.Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). Therefore, the duty to identify relevant impairments according to listing criteria "is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645 (D.Md. 1999). Plaintiff bears the burden of proof to show she meets all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Because "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (citations omitted). "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Id.* at 295 (citations omitted); *see Fox v. Colvin*, 632 F.App'x 750, 755–56 (4th Cir. 2015) (holding that the ALJ's conclusory and perfunctory step three analysis necessitated remand). Remand is warranted when the evidence in the record clearly demonstrates an issue related to a particular listing yet the ALJ failed both to properly identify the listing and to explain the medical evidence she used to support her decision, unless there is "an equivalent discussion of the medical evidence relevant to the Step Three analysis" elsewhere in her opinion. *Schoofield v. Barnhart*, 220 F.Supp.2d 512, 522 (D.Md. 2002). *See Keene v. Berryhill*, 732 F.App'x 174, 177 (4th Cir. 2018) ("[C]ourts have determined that an ALJ's step-three conclusion that the claimant did not meet the listing at issue can be upheld based on the ALJ's findings at subsequent steps in the analysis."); *Smith v. Astrue*, 457 F.App'x 326, 328 (4th Cir. 2011) (finding that substantial evidence supported the ALJ's step three finding based on the ALJ's decision as a whole, despite the ALJ's explanation being "cursory").

At issue here are the paragraph C requirements of each Listing. Paragraph C requires that Plaintiff have a "serious and persistent" mental disorder, evidenced by "a medically documented history of the existence of the mental disorder . . . over a period of at least 2 years," and both:

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [Plaintiff's] mental disorder . . . ; and

> 2. Marginal adjustment, that is, [Plaintiff has] minimal capacity to adapt to changes
> in [her] environment or to demands that are not already part of [her] daily life.

20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04; 12.00G. Marginal adjustment exists "when the evidence shows that changes or increased demands have led to exacerbation of [Plaintiff's] symptoms and signs and to deterioration in [Plaintiff's] functioning." *Id.*

Here, the ALJ stated that she had considered whether the paragraph C criteria were satisfied and concluded that the record did not support "a finding [that] the claimant has had marginal adjustment, or a minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life, despite her medical treatment." ECF No. 13-3 at 49. Plaintiff however contends that the evidence demonstrates that she meets the paragraph C requirements. She identifies evaluation records that described her as "very fragile" with "very limited capacity to endure any stress, with very limited coping abilities to tolerate or respond to distress." ECF No. 13-8 at 1355. She also identifies a May 2018 letter from Dr. Dana De Maso, Ph.D., in which she states that Plaintiff "can not [sic] follow a routine" and that Plaintiff "functions poorly in the world and will always need some support to function." *Id.* at 1105–06. Plaintiff's asserted evidence does not compel this Court to reverse the ALJ's decision.

In her step three analysis, the ALJ found that Plaintiff had "mild limitations in her ability to adapt or manage herself." ECF No. 13-3 at 49. The ALJ pointed to Plaintiff's ability to handle self-care and personal hygiene, care for her pets, and get along with caregivers, which was supported by the other evidence of the record. *Id.* The ALJ's step three conclusions may be supported by the ALJ's analysis at subsequent steps. *See Keene*, 732 F.App'x at 177 ("We must read the ALJ's decision as a whole."). In her analysis of Plaintiff's RFC, the ALJ identified evidence in the record to support her conclusion that Plaintiff did not meet the criteria for marginal adjustment, including a vocational assessment that stated that Plaintiff was able to follow

9

instructions and display an average work pace. ECF No. 13-3 at 52. The ALJ further referred to evidence that Plaintiff had worked on managing her anxiety levels to allow her to perform activities of daily life, evidence that Plaintiff displayed good attention to tasks and details, could work independently, and could correct mistakes when assessed by an evaluator, evidence that Plaintiff exhibited the ability to adjust to change in schedule and plans, evidence that Plaintiff successfully transitioned to a residential program and was able to live and work with others. *Id.* at 53–56.

Plaintiff asks this Court to reject the ALJ's conclusions about Listings in light of the evidence she asserts in her brief. However, this Court may not "reweigh conflicting evidence" in its substantial evidence review; where reasonable minds may differ, it must defer to the ALJ. *See Hancock*, 667 F.3d at 472. Considering the ALJ's analysis of Plaintiff's impairments, including her analysis of her RFC, her conclusion that Plaintiff's impairments did not meet the paragraph C requirements is supported by substantial evidence, and remand is not proper.

2. The ALJ's RFC Determination

Plaintiff next argues that the ALJ's RFC is unsupported by substantial evidence in three specific ways: first, the ALJ failed to comply with the treating physician rule; second, the ALJ applied in the incorrect legal standard by discrediting in Plaintiff's subjective complaints; and third, the ALJ failed to provide a narrative discussion to bridge Plaintiff's moderate limitation in concentration, persistence, and pace to a prohibition on production work pace. ECF No. 16-2 at 17, 25.

Addressing Plaintiff's first argument, the treating physician rule generally requires an ALJ give a treating physician's opinion "more weight" because the treating physician is likely the professional "most able to provide a detailed, longitudinal picture of [Plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained

from the objective medical findings alone." 20 C.F.R. § 404.1527(c)(2). The treating physician's opinion is entitled to "controlling weight" if it is well-supported by medical techniques and is "not inconsistent with the other substantial evidence in [Plaintiff's] case record." *Id. See Arakas*, 983 F.3d at 106. However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be afforded significantly less weight. *Craig*, 76 F.3d at 590. *See* 20 C.F.R. § 404.1527(a)(2). "[T]he ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Moreover, an ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(1). If the ALJ does not give controlling weight to a treating source's opinion, she then must weigh the following to determine the appropriate weight: the examining and treatment relationship (including the length, nature, and extent of the treatment relationship and the frequency of examination), supportability of the opinion by relevant evidence, consistency of the opinion with the record as a whole, the provider's specialization, as well as other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c).

The treating physician's opinion at issue is that of Dr. De Maso.[2] The ALJ noted that Dr. De Maso saw Plaintiff on a monthly basis for medication management. ECF No. 13-3 at 51. The ALJ detailed Dr. De Maso's findings and explained that she gave Dr. De Maso's opinion "no weight" because it was "inconsistent with her own examination findings that the claimant was improving with treatment." *Id.* at 54. She further explained that Dr. De Maso's opinion was "rather vague as to the functional capabilities and limitations in a work setting." *Id.* Dr. De Maso's opinion,

---

[2] Plaintiff also makes a singular reference to the ALJ's discussion of Stacey A. Black, M.S., but fails to argue that Black was entitled to deference under the rule. *See* ECF No. 16-2 at 19. Thus, the Court construes Plaintiff's argument as one concerning Dr. De Maso.

for instance, stated that Plaintiff could not follow a routine, but also detailed Plaintiff's

"tremendous progress," volunteer work, and ability to change plans and take the bus. *Id.* at 54–55.

Moreover, the ALJ referred to additional evidence in the record of Plaintiff's adjustment to life at

a residential program, her ability to complete activities of daily living, including group meals and

activities, with little assistance and her ability to complete evaluations and follow directions. *Id.* at

54–56.

The ALJ identified that Dr. De Maso's record was internally inconsistent and inconsistent

with other evidence of the record. The ALJ referred to the other evidence in the record in

identifying Plaintiff's ability. The ALJ also addressed the factors in 20 C.F.R. § 404.1527(c): she

identified the relationship between Plaintiff and Dr. De Maso; she discussed the length, nature,

and frequency of treatment; she explained that Dr. De Maso made vague statements and failed to

offer evidence to support some of her conclusions; and she identified inconsistency within Dr. De

Maso's opinion itself and when viewed in conjunction with other evidence in the record.[3] Thus,

substantial evidence did support the ALJ's decision to give Dr. De Maso's opinion no weight.

Turning then to Plaintiff's argument that the ALJ discredited her subjective complaints, the

United States Court of Appeals for the Fourth Circuit laid out the two-step process for an ALJ to

evaluate a person's subjective symptoms under 20 C.F.R. §§ 404.1529 and 416.929:

> Under the regulations implementing the [Act], an ALJ follows a two-step analysis
> when considering a claimant's subjective statements about impairments and
> symptoms. First, the ALJ looks for objective medical evidence showing a condition
> that could reasonably produce the alleged symptoms. Second, the ALJ must
> evaluate the intensity, persistence, and limiting effects of the claimant's symptoms
> to determine the extent to which they limit the claimant's ability to perform basic

[3] While the ALJ's only discussion of Dr. De Maso's specialization was that she had her Ph.D. and that she worked with Plaintiff of medication management, any error in failing to consider specialization is harmless. Even assuming an expertise in Plaintiff's disorders, a specialization would not have been so substantial as to compel this Court to find the ALJ's decision was not supported by substantial evidence.

12

> work activities. The second determination requires the ALJ to assess the credibility
> of the claimant's statements about symptoms and their functional effects.

*Lewis*, 858 F.3d at 865–66 (citations omitted). *See Craig*, 76 F.3d at 594 (describing the two-step

process). At the second stage, the ALJ must then assess Plaintiff's "symptoms to determine how

the symptoms' intensity and persistence affect the plaintiff's ability to work." *Lavinia R. v. Saul*,

No. CV SAG-20-1083, 2021 WL 2661509, at *4 (D.Md. June 29, 2021); 20 C.F.R. § 404.1529(c).

The ALJ must consider all of the available evidence, including medical history, objective medical

evidence, and statements by Plaintiff. 20 C.F.R. § 404.1529(c). Thus, the ALJ must not disregard

Plaintiff's complaints of "intensity, persistence, and limiting effects of symptoms *solely* because

objective evidence does not substantiate" them, *see Arakas*, 983 F.3d at 95 (emphasis added)

(quoting SSR 16-3p, 2016 WL 1119029, at *5), but Plaintiff's allegations "need not be accepted

to the extent they are inconsistent with the available evidence, including objective evidence of the

underlying impairment, and the extent to which that impairment can . . . reasonably be expected

to cause" the alleged symptoms. *See Lavinia R.*, 2021 WL 2661509, at *4 (quoting *Craig*, 76 F.3d

at 595). The ALJ's reliance on objective medical evidence to reject subjective complaints is more

limited when Plaintiff alleges impairments that do not produce objective medical evidence.

*Arakas*, 983 F.3d at 97. To show proper compliance with the two-step process, the ALJ

"must *both* identify evidence that supports [her] conclusion *and* 'build an accurate and logical

bridge from [that] evidence to [her] conclusion.'" *Woods*, 888 F.3d at 694 (emphasis in original)

(citations omitted).

    In *Lavinia R.*, this Court affirmed an ALJ's decision that while a plaintiff's medically

determinable impairments could reasonably be expected to cause the symptoms alleged, the

claimant's statements about intensity, persistence, and the limiting effects of the symptoms were

not entirely consistent with both the medical evidence and other evidence in the record. *Lavinia*

*R.*, 2021 WL 2661509, at *4 (citing the record). The ALJ considered the Plaintiff's medical records, treatment history, and provider recommendations and concluded that "Plaintiff's argument that the same treatment history should or could have substantiated her reported symptoms amounts to a request that this Court reweigh the evidence.

Plaintiff argues that the ALJ applied an incorrect legal standard by discrediting her subjective complaints. *See Arakas*, 983 F.3d at 101. Plaintiff has not plead in any fashion that her impairments are of the type, like fibromyalgia in *Arakas*, that do not produce objective medical evidence. Therefore, while an ALJ may not discredit Plaintiff's subjective complaints of "intensity, persistence, and limiting effects of symptoms *solely* because objective evidence does not substantiate," she is not required to defer to those subjective complaints "to the extent they are inconsistent with the available evidence." *See Arakas*, 983 F.3d at 95 (emphasis added) (citation omitted); *Lavinia R.*, 2021 WL 2661509, at *4 (quoting *Craig*, 76 F.3d at 595).

The ALJ's lengthy analysis and discussion of Plaintiff's treatment history, hearing testimony, and assessments and evaluations have provided substantial evidence to support her conclusion that Plaintiff is not disabled under the Act. The ALJ made determinations about severity based upon the whole record. Unlike in *Arakas*, the lack of objective evidence was not the ALJ's "chief, if not definitive, reason" for discounting Plaintiff's subjective complaints; she instead relied significantly on Plaintiff's evaluations, treatment records, and abilities, including her ability to complete evaluations, read and learn, interact with providers and family, live in a group home, work as a group to plan meals and activities, attend therapy, volunteer, and care for her pets. ECF No. 13-3 at 54–56. *See Arakas*, 983 F.3d at 97. Where the ALJ considered Plaintiff's full treatment history, as is clear here, it is not proper for the reviewing Court to reweigh such evidence. *See Lavinia R.*, 2021 WL 2661509, at *4.

14

Turning finally to Plaintiff's argument that the ALJ failed to sufficiently explain the RFC limitation on production pace, an ALJ must consider the entire record, including opinion evidence, impairments that are not severe, and any limitations the ALJ finds in determining Plaintiff's RFC. 20 C.F.R. § 404.1545(a) (ordering the ALJ to consider the entire record); SSR 96-8p, 1996 WL 374184, at *1 (defining the RFC as an assessment of an individual's ability to perform vocational-related physical and mental activities). "The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

Social Security Ruling ("SSR") 96-8p provides the proper framework for evaluating Plaintiff's RFC. Specifically, the Ruling states:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (footnote omitted). Remand may be appropriate "where an ALJ fail[ed] to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 78 F.3d at 636 (quoting *Cichocki*, 729 F.3d at 177). The ALJ must "build an accurate and logical bridge" between the record evidence and the ALJ's RFC finding. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). *See Deborah P. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-1850, 2019 WL 1936721, at *2 (D.Md. Apr. 30, 2019).

The Fourth Circuit concluded that remand is proper where the ALJ fails to explain why a Plaintiff's "moderate limitation in concentration, persistence, or pace" does not "translate into a limitation in [Plaintiff's] residual functional capacity." *Mascio*, 780 F.3d at 638–39. However, it is not a "categorical rule" that the ALJ must always include the moderate limitation in an RFC; instead, the ALJ must only address the limitations in the RFC or provide an explanation for omitting it. *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). In *Shinaberry*, the Fourth Circuit explained that the ALJ at issue addressed plaintiff's disability, "including her moderate limitations in concentration, persistence, or pace," and explained why evidence of the record supported the identified limitation. *Id.* at 122. The ALJ's finding with regard to plaintiff's mental limitation and her RFC were thus "sufficiently explained and supported by substantial evidence in the record." *Id.* Furthermore, this Court has previously explained that a limitation on protection paced activity accounts for Plaintiff's moderate limitation in concentration, persistence, or pace. *See Chase v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-14-2961, 2016 WL 199410, at *3 (D.Md. Jan. 15, 2016); *Shirey v. Comm'r*, No. CV SAG-15-261, 2015 WL 7012718, at *4 (D.Md. Nov. 10, 2015); *Rayman v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-14-3102, 2015 WL 6870053, at *3 (D.Md. Nov. 6, 2015).

Here, Plaintiff contends that, despite finding Plaintiff experienced moderate limitations in concentration, persistence, and maintaining pace, the ALJ failed to "provide a narrative discussion to bridge the evidence" to her conclusion that the limitation could be accommodated for by limiting "production pace" work in her RFC. ECF No. 16-2 at 25. However, the ALJ's decision to include a production rate limitation does account for Plaintiff's moderate limitation in concentration, persistence, or pace according to case law from this Court. *See Chase*, 2016 WL 199410, at *3; *Shirey*, 2015 WL 7012718, at *4; *Rayman*, 2015 WL 6870053, at *3. Moreover, the ALJ identified

evidence in the record to support her conclusion that the moderate limitation was accounted for with a production rate limitation. She cited to Plaintiff's ability to complete evaluations, her interactions with her providers and family, her ability to function in a group home and participate in group activities, as well as a vocational assessment that detailed an average work pace. ECF No. 13-3 at 52, 56. Again, the ALJ's lengthy review of the evidence draws a connection between Plaintiff's impairments and her limitations, including a limitation this Court has previously accepted. *See Chase*, 2016 WL 199410, at *3. As with each of her other arguments, Plaintiff asks the Court to reweigh the evidence of the record to conclude that the ALJ erred in her determination. This is not the role of the Court. Where substantial evidence exists, as it does here, and the ALJ draws a bridge between the evidence and her discussion of Plaintiff's limitations, remand is not warranted.

## CONCLUSION

The Court thus concludes that the ALJ properly evaluated the evidence of record and provided substantial evidence to support the finding that Plaintiff was "not disabled" within the meaning of the Act. Therefore, based on the foregoing and pursuant to 42 U.S.C. § 405(g), Plaintiff's Motion for Summary Judgment (ECF No. 16) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 17) is GRANTED, and the decision of the SSA is AFFIRMED.

Date: 5 November 2021

A. David Copperthite
United States Magistrate Judge